UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARCO V. BRAVO, WILSON ACUNA,
BLANCA ALVAREZ, DEIFILIO CORDERO,
individually and on behalf of others similarly
situated,

       Plaintiffs,

   -against-

GRAND REVIEW, LLC, URBAN AMERICAN
MANAGEMENT CORP. and URBAN
AMERICAN MANAGEMENT, LLC,

       Defendants.
------------------------------------------------------------------X

15-CV-0030(DLI)(CLP)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410

**PRELIMINARY STATEMENT**

Defendants submit this memorandum of law in support of their motion to enforce a settlement agreement reached by the parties. Plaintiffs may not back out of the agreement simply because they changed their minds.

The parties reached an enforceable agreement. All of the terms were agreed upon and reduced to writing. There were no open or disputed items. Plaintiff's counsel communicated his authority to settle and confirmed his acceptance of the finalized written settlement agreement. Plaintiffs never expressed any intention not to be bound until signing the written settlement agreement. Nor does the written settlement agreement itself contain any language suggesting such a reservation of rights. There is no effective date conditioned upon signing. There is no merger clause requiring a signed writing to modify. In other words, there is no legitimate basis for Plaintiffs to claim a contract was not formed. And because a contract was formed, the Court should not give effect to Plainitffs' second thoughts.

There is no ambiguity as to what the settlement was or whether the parties agreed to it. As explained herein, the Court should grant this motion and enforce the settlement.

**STATEMENT OF FACTS**

Plaintiffs are building service workers alleging various wage-and-hour violations, principally that they were not paid for all hours worked. (Robb Dec. ¶2; Ex. A).

On February 12, 2015, counsel spoke an exchange e-mails in an initial attempt to resolve the case. (Robb Dec. ¶3; Ex. B). A course of negotiations took place over the weeks that followed.

On March 19, 2015, Defendants' confirmed by e-mail an offer to settle the case for a sum of $17,500.00. (Robb Dec. ¶4; Ex. C). Plaintiffs' counsel responded by e-mail to accept, stating "I have authority to settle the case at $17.5k." (Robb Dec. ¶4; Ex. C). Later that day, Plaintiffs' counsel consented to reporting the settlement and requesting a 30-day order of dismissal based upon the settlement. (Robb Dec. ¶4; Ex. C).

Apparently, there was some dialogue among plaintiffs as to how the settlement sum should be allocated. On May 12, 2015, Plaintiffs' counsel wrote:

> After lengthy discussions, the plaintiffs approved the following settlement check amounts:
>
> Marco Bravo - 33% = $3718.20
> Deifilio Cordero - 7% = $788.70
> Wilson Vicuna - 41% = $4619.56
> Blanca Alvarez - 19% = $2140.78
>
> Please make the above changes to the settlement agreement and send me a copy that I can finally get signed off. Thank you for your patience.

(Robb Dec. ¶6; Ex. D).

On May 14, 2015, Defendants' counsel sent the finalized document with plaintiffs' allocations. (Ex. E). Plaintiffs' counsel acknowledged receipt by e-mail without further comment or revision, stating "I'll get this signed asap." (Robb Dec. ¶7; Ex. D).

Apparently unbeknownst to Plaintiffs' counsel, Plaintiffs had a change of heart after their acceptance of the finalized terms had been communicated. Plaintiffs' counsel scheduled a "signing party" and the party evidently turned into a "mutiny." (Robb Dec. ¶8; Ex.

2

E).  According to counsel: "***The plaintiffs reneged on their agreement*** and informed us they will look for a new attorney."  (Robb Dec. ¶8; Ex. E; emphasis supplied).

Plaintiff counsel never, in any of the oral or written communications between the parties, stated an intention for Plaintiffs not to be bound until signing.

On these facts, as explained herein, an enforceable settlement was reached.

## ARGUMENT

### I.   *Standard for enforcing an unsigned settlement agreement*

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (*citing Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)).  Where a settlement agreement has not been reduced to signed writing, courts must determine whether the parties intended to be bound by the agreement in the absence of a signed writing.  *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) (holding that "parties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time").

The Second Circuit has adopted a four-factor test to determine whether the parties intended to be bound in the absence of a signed writing: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir.1985)).  No single factor is dispositive, but each provides significant guidance.  *Id.*

3

Once a settlement agreement is reached, it "is binding and conclusive and the parties are bound to [its] terms. . .even if a party has a change of heart between the time of the agreement. . .and the time it is reduced to writing." *Elliot v. City of New York*, No. 11 CV 7291, 2012 U.S. Dist. LEXIS 126133, 2012 WL 3854892 (S.D.N.Y. Sept. 5, 2012) (*quoting McDonald v. Dragone Classic Motor Cars*, No. 395 CV 499, 2003 U.S. Dist. LEXIS 14587, 2003 WL 22056626 (D. Conn. Apr. 29, 2003)). Indeed, "afterthought or change of mind are not sufficient to justify rejecting a settlement." *Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (citations omitted).

Moreover, the Second Circuit has held that "because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). "If an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." *Fennell v. TLB Kent Co.*, 865 F.2d at 502 (*citing International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir. 1979)). The burden of proof to show that the attorney lacked authority rests on the party challenging that attorney's authority. *In re Artha Mgmt.. Inc.*, 91 F.3d at 329.

Under these standards, the Court should enforce the Agreement.

## II.     *The Agreement is enforceable under* **Winston**

For the following reasons, the *Winston* factors weigh heavily in favor enforcing the agreement.

### A. Plaintiffs did not express an intention not to be bound

The first *Winston* factor favors enforcement. Plaintiffs did not at any point in the settlement negotiations articulate a reservation of rights or otherwise express their desire not to be bound absent a signed writing. There is nothing in the unsigned settlement agreement to suggest a different conclusion. For example, the unsigned agreement does not provide for an effective date upon execution. (Ex. E). Nor does the unsigned agreement contain a merger clause requiring a signed writing to modify. (Ex. E).

Plaintiffs' acceptance of the settlement terms was unqualified.

### B. Partial performance factor is neutral

The second *Winston* factor is neutral. Although payment was not made pursuant to the settlement, the parties did report the settlement to the Court and request a 30-day order of dismissal. Subsequently, the parties refrained from further litigation and undertook to draft and finalize a written settlement agreement. Thus, the parties acted consistent with understanding that a settlement had been reached.

Abandonment of discovery and trial preparation, in contemplation of and reliance on a settlement agreement has been recognized as a form of partial performance that prevents the non-moving party from claiming this *Winston* factor in its favor. *See e.g., Alvarez v. City of New York*, 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2000).

### C. All the contract terms were agreed

The third *Winston* factor favors enforcement. When analyzing this factor, courts look at "whether there was literally nothing left to negotiate or settle, so that all that remained to

5

be done was to sign what had already been fully agreed to." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984). That was the case here. There is no uncertainty as to the contract terms. The parties reduced the terms to a written settlement agreement. Plaintiff's counsel confirmed via e-mail that the final written settlement agreement was acceptable. There were no open or disputed settlement terms.

**D.      Though not necessary given the simplicity of the terms, the Agreement is written**

The fourth *Winston* factor favors enforcement. Because the existence of the *Winston* test necessarily means that settlements agreements may be enforceable without a signed writing, courts have interpreted the fourth *Winston* factor to ask whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing. *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 551 (2d Cir. 1998) ("In view of the size of the transaction, the nature of the assets being purchased, and the length of the contemplated employment contracts, the Agreement clearly was of the type that ordinarily would be committed not only to a writing but to a formal contract complete with representations and warranties and the other standard provisions usually found in sophisticated, formal contracts."); *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d at 326 ("We have also found that the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally."). This settlement called for straight-forward, lump-sum payment of less than $5,000.00 to each plaintiff in exchange for general releases. The transaction is sufficiently simple to satisfy this fourth *Winston* factor.

But even more important, there was a writing—a writing where acceptance was confirmed via e-mail. As is the case here, where the terms of the settlement have been reduced

6

to a writing, albeit unsigned, courts have found the fourth *Winston* factor inapplicable. *See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 11130, *34, 2005 WL 1377853 (S.D.N.Y. June 9, 2005)(enforcing settlement agreement confirmed in e-mail exchange between counsel). See, e.g., *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d at 251-52 ("Here, even if the agreement is the type that is typically reduced to writing, the written draft of the settlement had essentially been finalized. . . . The terms, with the exception of the final dollar amounts, were 'substantially complete' and 'largely reduced to writing.' Moreover, the parties had confirmed to the court, as part of the process of negotiating the monetary amount, that their agreement on a sum would settle the case.") (citations omitted); *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. at 295 ("The fourth factor is not particularly meaningful in this context, the agreements are in writing.").

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendants' motion to enforce the settlement, and award such other and further relief as the Court deems proper and just.

Dated: July 28, 2015
      New York, New York

                                              Respectfully submitted,
                                              CLIFTON BUDD & DeMARIA, LLP
                                              Attorneys for Defendants

                                              By: _____
                                                   Arthur J. Robb
                                                   The Empire State Building
                                                   350 Fifth Avenue, 61st floor
                                                   New York, New York 10118
                                                   (212) 687-7410